IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Leroy K. Smalls,

Plaintiff,

v.

Dennis Patterson, *Assistant Deputy Director of Operations*; Curtis Early, *Warden of Perry*; Clayton Holbrook, *Senior Classification Perry*; D. Williams, *RHU Classification Case Manager Perry*; F. Mckie, *Grievance Administrator*; K. McKnight, *Grievance Coordinator Perry*,

Defendants.

C/A No.: 9:24-cv-3966-SAL

**ORDER**

Plaintiff Leroy K. Smalls, proceeding pro se and in forma pauperis, filed this Amended Complaint against the named Defendants, alleging that they violated his constitutional rights by keeping him confined in the Restrictive Housing Unit ("RHU") at Perry Correctional Institution and in other ways. *See* ECF No. 15. Defendants moved for summary judgment, which Plaintiff opposes. [ECF Nos. 97, 106, 107, 113, 114.] This matter is before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Molly H. Cherry. [ECF No. 119.] Judge Cherry recommends that the court grant Defendants' motion for summary judgment. Plaintiff filed objections to the Report, to which Defendants replied, and then Plaintiff filed a surreply. [ECF Nos. 124, 125, 126.]

For the reasons that follow, the court adopts the Report, overrules Plaintiff's objections, and grants summary judgment in favor of Defendants.

## STANDARD OF REVIEW

### I. Review of a Report and Recommendation

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)). The district court then reviews *de novo* those portions of the report or specified proposed findings or recommendations to which objection is made. *Id.* To trigger *de novo* review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* But a party must do more than state, "I object." *Id.*

### II. Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red*

*Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of proving to the court that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Because Plaintiff is proceeding pro se, the court is charged with liberally construing the pleadings to allow him to fully develop potentially meritorious claims. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))). That said, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

**DISCUSSION**

The 41-page Report summarizes the relevant facts, viewed in the light most favorable to Plaintiff, and sets forth the applicable standards of law. Plaintiff largely does not object to that recitation, which the court adopts. [ECF No. 119.]

## I. Background and Procedural History

Plaintiff is currently incarcerated at Perry Correctional Institution ("Perry"), where he was first admitted to SCDC in 1994. Plaintiff's claims in this case arise from his transfer to the RHU at Perry in July 2023.[1] He asserts that conditions in Perry's RHU are harsher and more restrictive than those in other RHUs within SCDC, citing excessive lighting, little to no time outside, no visitation with family, poorly cleaned cells, and inadequate food portions. He further maintains that he has a liberty interest in being placed in general population, which would allow him to communicate more freely with and visit his family members and avoid the harsh conditions of the RHU. *See* ECF No. 119 at 4.

The Report details the complex process by which SCDC reviews the custody classifications of inmates. *Id.* at 4–7. While SCDC policy authorizes extended stays in RHU confinement at a level of Security Detention ("SD"), such confinement is used when "no other form of housing will ensure the inmate's safety, the safety of staff, other inmates, or the public." [ECF No. 97-1 at 10.] Further, inmates assigned to SD must have their classification reviewed at least every 90 days, with the goal of transitioning them to less restrictive housing. *See* ECF No. 119 at 5 (citing ECF No. 97-1 at 16). These reviews are conducted by the RHU Institutional Classification Committee ("ICC"). Depending on the circumstances, an ICC decision may be final or may constitute only a recommendation subject to further review by Central Classification, the RHU Multidisciplinary Committee ("RHU MDC"), and/or the Assistant Deputy Director of Operations ("ADDO") for a final decision. *Id.* at 6–7.

---

[1] In 2009, Plaintiff was charged with the murder of Lenmont Jones, another inmate. Plaintiff was acquitted of Jones's murder in state court but was convicted of the homicide through the prison disciplinary system in September 2014 and sentenced to time served. As noted in the Report, this disciplinary conviction is not material to Defendants' motion, but it provides some context for the parties' arguments. *See* ECF No. 119 at 3.

Plaintiff's own classification history reflects several such reviews. At the 90-day review following his initial transfer to RHU, the ICC recommended that Plaintiff advance to Level 3[2] based on his positive behavior since his transfer to the RHU. *Id.* at 7. But at the next 90-day review, in February 2024, the ICC recommended that he remain at Level 3 because he was under investigation by police services. *Id.* At the next 90-day review in May 2024, the ICC recommended that Plaintiff, having had no disciplinary infractions during his preceding six months in the RHU, be released to general population. *Id.* In June 2024, however, the RHU MDC voted to retain Plaintiff in SD due to the severity of the reasons underlying his original placement. *Id.* Then in July 2024, the Special SD Review Committee reviewed Plaintiff's classification and voted to retain him in the RHU. *Id.*

At another 90-day review in September 2024, the ICC recommended that Plaintiff remain in SD3 "per the division of operations." *Id.* (quoting ECF No. 97-1 at 100). But at the following 90-day review in December 2024, the ICC recommended that Plaintiff advance to SD4 due to having remained disciplinary-free in the RHU. *Id.* at 7–8. In January 2025, however, it was decided that Plaintiff would remain in SD.[3] *Id.* at 8.

---

[2] According to the relevant policies, Level 1 is the most restrictive level. [ECF No. 97-1 at 13.] Level 2 is the initial assignment for SD inmates. *Id.* Levels 3 and 4 are described as "intermediate level" assignments, under which inmates receive increased privileges and property and may continue working toward positive behavioral patterns. *See id.* at 14–15.

[3] Defendant Dennis Patterson was the Assistant Deputy Director of Operations ("ADDO") when Plaintiff was transferred to the RHU in 2023. *See* ECF No. 106 at 9. In July 2025, Defendant Patterson was promoted to the Acting Assistant Director of Operations, and Joseph Stines became the ADDO. ECF No. 97-1 at 2; ECF No. 106 at 9–10. Although Plaintiff appears to suggest that Defendant Patterson improperly overrode a decision by Stines to advance Plaintiff to a less restrictive security level in September 2025, *see* ECF No. 126 at 2, Defendants note that, in his current position, Defendant Patterson has final decision-making authority over the ADDO and decisions concerning inmate's housing status. [ECF No. 125 at 3.] Thus, Defendants maintain it was neither contrary to prison policy nor a violation of Plaintiff's constitutional rights for Defendant Patterson to override a recommendation by the ADDO. The court also notes that this action took place after Plaintiff filed this action.

## II. Analysis

Plaintiff's claims, although centered on his placement in the RHU at Perry, are wide-ranging. He raises claims against Defendants in both their individual and official capacities under the First, Eighth, and Fourteenth Amendments.

### A. Individual Capacity Claims

#### 1. First Amendment Claims

Plaintiff alleges multiple First Amendment claims. These include complaints related to the inmate grievance system, retaliation by prison officials, and restrictions on his contact with loved ones while he is in the RHU. The court addresses these claims in turn.

##### a. Grievance Complaints – Defendants McKnight and McKie

Plaintiff alleges that Defendants K. McKnight and F. McKie conspired against him by manipulating or failing to follow SCDC policy in addressing his grievances. *See* ECF Nos. 15 at 12–15. As explained in the Report, generally, there is no federal constitutional right to an inmate grievance system. *See* ECF No. 119 at 13; *see also Booker v. South Carolina Dep't of Corrs*., 855 F.3d 533, 541 (4th Cir. 2017) ("*Adams* established a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process, for example." (citing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994))). To the extent Plaintiff alleges that these Defendants violated SCDC policy by denying Plaintiff the right to appeal the denial of his release from lock-up or by failing to adequately process his grievances, such claims are likewise not actionable under § 1983. *See Jenkins v. Porter*, Civil Action No. 3:09-2697-HMH-JRM, 2010 WL 2640253, at *3 (D.S.C. June 3, 2010) ("[A]llegations that Defendants did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations."), *adopted by* 2010 WL 2640257 (D.S.C. June

29, 2010). The Report further explains that, although Plaintiff asserts that Defendants McKnight and McKie conspired against him and thwarted SCDC policy in handling his grievances, he has presented no evidence or testimony supporting those allegations. *See* ECF No. 119 at 13–14.

Plaintiff objects to the recommended dismissal of those claims. He argues he has a due process right to a grievance procedure and points to the protection afforded by SCDC policy. *See* ECF No. 124 at 3–4. But as explained above and in the Report, "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams*, 40 F.3d at 75. Plaintiff further argues that he submitted various exhibits (#H through #U-2) proving "intentional manipulations of each Defendant . . . ." [ECF No. 124 at 3.] The court has reviewed those exhibits, *see* ECF No. 15 at 25–33; ECF No. 107-1 at 39–44, which include various grievance forms submitted by Plaintiff that were denied. But whether Plaintiff's grievances were properly processed under SCDC policy is immaterial to the viability of his § 1983 claim. *See Booker*, 855 F.3d at 542. Thus, there is no genuine issue of material fact as to the claims Plaintiff makes against Defendants McKnight and McKie, and the court must overrule his objections.

**b. Retaliation Claim – Defendant Williams**

Plaintiff also argues that Defendant Williams retaliated against him for using the grievance system.[4] Such claims are actionable under § 1983. *See Booker*, 855 F.3d at 541 ("That a prison is not required under the Constitution to provide access to a grievance process does not mean that prison officials who retaliate against inmates for filing grievances do not violate the Constitution."). But to establish a First Amendment retaliation claim, Plaintiff must first demonstrate (1) that he engaged in constitutionally protected First Amendment activity; (2) that

[4] The Report notes that this claim was not included in the Amended Complaint, *see* ECF No. 15, and could be dismissed on that basis. [ECF No. 119 at 14 n.4.] But the magistrate judge considered it out of an abundance of caution, and the court does the same.

Defendant Williams took some action that adversely affected that protected activity; and (3) that there was a causal relationship between Plaintiff's protected activity and Defendant Williams's conduct. *See Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020).

Here, Plaintiff suggests that Defendant Williams changed her vote regarding Plaintiff's classification status after he filed grievances accusing her of denying him a timely 90-day review hearing. *See* ECF No. 106-1 at 51–52. Assuming the first two elements of retaliation are satisfied, Plaintiff has not identified evidence to demonstrate a causal relationship between the protected activity and Defendant Williams's vote. *See* ECF No. 119 at 15–16. As noted in the Report, "[a] claim for retaliation under the First Amendment carries a 'rigorous' causation requirement[,]" which, at minimum, requires a showing that the defendant knew about the protected activity. *Id.* (quoting *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015); citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005)). Plaintiff has not presented such evidence. *Id.*

Plaintiff objects, arguing his Exhibits #E and #N show Defendant Williams was aware of his grievances. [ECF No. 124 at 4.] The court, having reviewed those exhibits, disagrees. Exhibit #E is a Step 1 Grievance Form, and Exhibit #N is a Request to Staff Member in which Plaintiff complains that he was deprived of the right to appear at his 90-day hearing. Neither document, however, was processed by Defendant Williams. *See* ECF No. 106-1 at 58–59. Nor does either document indicate that it was forwarded to Defendant Williams for a response. *See id.* Plaintiff identifies no other evidence establishing Defendant Williams was aware of these grievances. *See* ECF No. 125 at 4. Moreover, the other evidence on which Plaintiff relies indicates that Defendant Patterson, not Williams, was solely responsible for Plaintiff remaining in RHU. *See* ECF No. 119 at 16. For example, the relevant records show that, in May 2024, the ICC committee recommended

Plaintiff's release from RHU and return to the general population because he had been "disciplinary free for 6 months in RHU." [ECF No. 97-1 at 98–99.] In July 2024, however, the SD Review Committee voted to retain Plaintiff in SD. *Id.* at 99. At Plaintiff's 90-day review in September 2024, the ICC recommended Plaintiff remain in SD3 "per the division of operations." *Id.* at 100. Those ICC recommendations bear Defendant Williams's signature. *Id.* at 98, 100. But nothing in the record permits the court to infer that Defendant Williams retaliated against Plaintiff because he filed grievances. Rather, the evidence shows only that the ICC's recommendation changed based on instructions from the Division of Operations. Plaintiff's speculation that the change was retaliatory is unsupported by any evidence.

Accordingly, while Plaintiff's First Amendment retaliation claim is cognizable, he has failed to present a genuine issue of material fact as to the causal relationship between Plaintiff's protected activity and Defendant Williams's conduct. Thus, the court overrules his objection and finds Defendants are entitled to summary judgment.

**c. Communication with Family**

Plaintiff also claims that his First Amendment rights have been violated because he is permitted to call his family only once per week and has otherwise been stripped of the ability to communicate with them. *See* ECF Nos. 119 at 17–19; 124 at 4–5. As recognized in the Report, inmates retain a constitutional right to communicate with others beyond the prison walls, but that right is subject to limitations, including those based on legitimate penological interests. *See* ECF No. 119 at 17–18. Here, even viewing the evidence in the light most favorable to Plaintiff, the record provides a legitimate basis for his placement in Perry's RHU based on the threat Plaintiff poses to the safety of other inmates, staff, and the public. *See* ECF No. 119 at 18.

Defendants have presented evidence of that threat, but even excluding the disputed evidence, Defendants are entitled to summary judgment on this claim as explained in the Report. Defendant Patterson averred that he had received intelligence indicating Plaintiff was operating a drug organization from prison. *See* ECF No. 97-1 at 3. But Plaintiff denied such involvement, and the magistrate judge took Plaintiff's version of the facts as true for purposes of summary judgment. *See* ECF No. 119 at 18.[5] Defendant Patterson further averred to his knowledge of Plaintiff's history and propensity for violence. *See* ECF No. 97-1 at 3. Plaintiff acknowledged that he was incarcerated for murder, although he states he is no longer the person he was when he was first incarcerated. *See* ECF No. 106 at 3. As noted previously, Plaintiff was also convicted of homicide of another inmate through SCDC's disciplinary system. These undisputed facts provide at least part of the basis for Defendant Patterson's recommendation that Plaintiff remain in the RHU. *See* ECF No. 119 at 18. More importantly, Plaintiff is allowed to communicate with his loved ones although perhaps not in the manner or frequency he prefers. As the Report explains, other courts have found significantly less contact to be constitutionally permissible, and inmates have no constitutional right to any particular form of communication. *Id.* at 19. Thus, the magistrate judge recommends this court grant Defendants' motion as to this First Amendment claim.

Plaintiff objects that he is afforded a tablet for four hours a day but is permitted only one call per week with his family. [ECF No. 124 at 4.] He also cites *Porter v. Clarke*, 923 F.3d 348 (4th Cir. 2019), in which death row inmates were permitted to call family members between 8:00 a.m. and 9:30 p.m. *See id.* But the fact that inmates in other prisons had more expansive privileges does not establish that such privileges are constitutionally required. Indeed, as noted by the

---

[5] The magistrate judge recognized that Plaintiff's denial of involvement in any drug organization is not necessarily inconsistent with Defendant Patterson's knowledge of an investigation. *See* ECF No. 119 at 18 n.6.

magistrate judge, other federal courts have concluded that similar or even more restrictive limitations to those at issue here do not violate the First Amendment. *See Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (finding restriction of telephone usage to one call per month did not violate First Amendment).

Plaintiff further argues that Defendants failed to fully address Plaintiff's claims regarding his inability to visit or text his loved ones, despite an order from the magistrate judge. *See* ECF No. 124 at 5. The order Plaintiff cites, concerned his motion for a preliminary injunction, which has already been resolved. *See* ECF Nos. 72, 95, 111. In sum, the court agrees with the Report's analysis and recommendation as to this claim. Even viewing the evidence in the light most favorable to Plaintiff, the record does not establish a constitutional violation arising from the restrictions on his communication with family. Defendants are therefore entitled to summary judgment on this claim. Plaintiff's objections are overruled.

**2. Fourteenth Amendment Claims**

Plaintiff brings both equal protection and due process claims under the Fourteenth Amendment.

**a. Equal Protection**

Plaintiff claims that Defendants McKnight and McKie discriminated against him by not processing his grievances.[6] *See* ECF No. 124 at 5. To succeed on an equal protection claim, Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful

---

[6] As noted in the Report, in briefing, but not in his Amended Complaint, Plaintiff suggested that Defendant Early discriminated against him. See ECF No. 119 at 20 n.7. However, the Report concluded that, even if properly pled, that claim would be subject to dismissal. Id. Plaintiff did not object to this conclusion.

discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). The Report concludes that Plaintiff has failed to make this showing. [ECF No. 119 at 20–21.] In his objections, Plaintiff asks the court to compare a grievance he submitted, ECF No. 107-1 at 5 (Exhibit #G), which he claims was not properly processed, with a grievance submitted by another inmate, Wayne Hollinshed, ECF No. 107-1 at 17 (Exhibit #R), which was processed. The court has reviewed both grievances. Although both challenge ICC recommendations maintaining the respective prisoner's custody classification, the grievances also contain notable differences.

For example, Hollinshed requested that the ICC's recommendation be reversed and that he be released to general population. [ECF No. 107-1 at 17.] And "B. Williams" signed Hollinshed's grievance, marked it as both received and processed, and referenced the Warden's decision, which appears to have been recorded on the reverse side of the form that was not included in the record. Plaintiff, by contrast, requested that the ICC's recommendation be reversed and that his matter be forwarded to the MDC for review. *Id.* at 5. Defendant McKnight signed Plaintiff's grievance and indicated that it was being processed but returned as non-grievable. McKnight explained that, under SCDC policy, a Request to Staff Member form from Classification had to be submitted with the grievance and signed within eight days of the incident. *Id.* at 5.

Again, the court recognizes that there are some similarities between these grievances. But the forms themselves do not establish that Plaintiff and Hollinshed were similarly situated or that Plaintiff was treated differently because of intentional or purposeful discrimination. *See Ephraim v. Angelone*, 313 F. Supp. 2d 569, 573–74 (E.D. Va. 2003) ("Absent evidence of differential treatment and intentional discrimination, Plaintiff's equal protection claim cannot survive summary judgment."). The court overrules this objection.

**b. Due Process**

Turning next to Plaintiff's due process claim, Plaintiff argues that his rights have been violated both by his inability to return to general population and by alleged procedural irregularities in the custody-review process. To demonstrate a due process violation, Plaintiff must first identify a protected liberty interest and then show a deprivation of that interest without due process of law. *Smith v. Collins*, 964 F.3d 266, 274 (4th Cir. 2020) (citing *Incumaa v. Stirling*, 791 F.3d 517, 526 (4th Cir. 2015)). As a prisoner, Plaintiff has no "inherent, constitutionally protected liberty interest" in avoiding more restrictive security detention, so he must identify a state-created liberty interest of the same. *Id.* at 275. He therefore must "show two things: first, that there is 'a basis for an interest or expectation in state regulations' for avoiding such confinement, and second, that the conditions 'impose atypical and significant hardship . . . in relation to the ordinary aspects of prison life.'" *Id.* (quoting *Prieto v. Clarke*, 780 F.3d 245, 249–50 (4th Cir. 2015)).

The Report concludes that Plaintiff has established the first prong based on SCDC policy requiring periodic 90-day reviews of inmates held in the RHU. [ECF No. 119 at 22–23.] But even assuming Plaintiff has satisfied that prong, his claim fails because he has not presented a genuine issue of material fact as to the second prong—whether the conditions of his confinement in the RHU present an atypical and significant hardship in relation to the ordinary incidents of prison life. *See id.* at 23–27. As outlined by the Fourth Circuit, this "atypical-and-significant-hardship analysis [turns] on primarily three factors: '(1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence.'" *Smith*, 964 F.3d at 275 (quoting *Incumaa*, 791 F.3d at 530).

The Report explains why these three factors weigh against a finding that Plaintiff's confinement presents an atypical and significant hardship. *See* ECF No. 119 at 23–27. First, although Plaintiff describes the conditions in Perry's RHU and argues that they are more restrictive than those in other SCDC RHUs, he has not presented sufficient evidence regarding the conditions in general population to permit a meaningful comparison of the magnitude of the restrictions between RHU confinement and general population. *See id.* at 24. Second, even when the evidence is viewed in Plaintiff's favor, the record does not establish that his confinement is indefinite. His custody status has been regularly reviewed and the record contains undisputed evidence supporting his continued placement in the RHU. *See id.* at 24–26. Thus, this factor, too, weighs against finding an atypical and significant hardship. Finally, while Plaintiff suggests that being required to wear restraints and a bright yellow[7] jumpsuit at his parole hearings has negatively impacted his ability to obtain parole, even weighing this factor in his favor does not alter the overall analysis. *See id.* at 27.

Plaintiff objects to the magistrate judge's assessment of these factors. [ECF No. 124 at 6–8.] According to Plaintiff, his references to RHUs at other SCDC facilities were intended to show the harshness of the conditions at Perry. He also claims that, in general population, he would have access to visitation, recreation, the canteen, and fresh air and would be permitted to appear at his parole hearings without restraints or a bright yellow jumpsuit. *Id.* at 6. The court has reviewed the evidence Plaintiff identifies, including affidavits describing the conditions in Perry's RHU and asserting that those conditions are harsher than those in similar units at other SCDC facilities. But the court agrees with the magistrate judge that Plaintiff offers insufficient evidence to permit a

[7] Although the Report refers to an orange jumpsuit, the affidavit provided by Plaintiff's fiancé references a yellow jumpsuit that he wore during his parole hearing in March 2025. *See* ECF No. 107-3 at 6–7.

meaningful comparison between the magnitude of the restrictions in Perry's RHU and those in general population. *See* ECF No. 119 at 24; *see Incumaa*, 791 F.3d at 528 ("Although the general prison population is not the relevant atypicality baseline in all cases, it is the touchstone in cases where the inmate asserting a liberty interest was sentenced to confinement in the general population and later transferred to security detention."); *Barksdale v. Clarke*, Civil Action No. 7:16-cv-00355, 2017 WL 3381370, at *6 (W.D. Va. Aug. 4, 2017) ("Undoubtedly, Level S inmates experience more restrictive conditions than Level 5 inmates in general population, but that fact does not render such confinement atypical or significantly harsh."); *Muhammad v. Mathena*, Civil Action No. 7:14cv00529, 2016 WL 8118180, at *3 (W.D. Va. Dec. 12, 2016) (recognizing that even when conditions are more restrictive, they are not necessarily substantially different from those in general population), *adopted by* 2017 WL 395225 (W.D. Va. Jan. 27, 2017). Accordingly, the court cannot conclude that this factor weighs in Plaintiff's favor and overrules this objection.

Plaintiff next objects to the magistrate judge's conclusion that his custody status has been reviewed at regular intervals in accordance with SCDC criteria. *See* ECF No. 124 at 7. In particular, Plaintiff points to the fact that he was returned to general population in 2018 after being placed in solitary confinement in 2009 for his homicide disciplinary conviction. *Id.* And he remained in general population until his 2023 transfer to the RHU, which Plaintiff argues occurred despite his having no disruptive or assaultive behavior. *Id.* Plaintiff also points to evidence that Defendant Patterson overrode the decision of ADDO Stines recommending that Plaintiff be released to a less restrictive level. *Id.* These arguments, however, do not alter the court's conclusion. As addressed in the Report, the relevant inquiry is not simply whether Plaintiff was ultimately released from the RHU, but whether the record demonstrates his confinement was indefinite *See* ECF No. 119 at 24–26. Here, the evidence establishes that Plaintiff received periodic classification reviews and

opportunities to be heard and that, at various points, the ICC recommended that he advance to less restrictive housing or return to the general population, even though those recommendations were not always adopted. Plaintiff therefore has not presented a genuine issue of material fact concerning the indefinite nature of his RHU confinement. This factor weighs against finding that his confinement imposed an atypical and significant hardship, and Plaintiff's objection is overruled. *Id.*

Finally, as to collateral consequences, Plaintiff points to Defendant Patterson's statement that Plaintiff was under investigation, which Plaintiff disputes by citing evidence that he was not under investigation. *See* ECF No. 124 at 8. The court does not discern how the alleged investigation constitutes a collateral consequence of Plaintiff's RHU confinement. Plaintiff further alleges that he was denied parole due to his RHU placement. But even assuming this factor weighs in Plaintiff's favor, the magistrate judge concluded that the three factors, considered together, do not establish that Plaintiff's confinement imposed an atypical and significant hardship sufficient to create a protected liberty interest in avoiding RHU confinement. *See* ECF No. 119 at 27. The court agrees and overrules Plaintiff's objection. The court finds Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment claims.

**3. Eighth Amendment Claims**

Plaintiff alleges that the conditions in the RHU, including excessive bright lights, restrictive food portions, unsanitary conditions, and limited outdoor recreation time, violate his Eighth Amendment rights. *See* ECF No. 15-3 at 2–3. There are two prongs to an Eighth-Amendment conditions-of-confinement claim—the objective prong, requiring "a serious deprivation of a basic human need," and the subjective prong, requiring "deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir.

1991) (internal citations omitted). The Report addresses each of the conditions Plaintiff challenges—lighting, outdoor recreation, cleaning supplies, and food portions—and concludes that, even construing the facts in Plaintiff's favor, he has failed to satisfy the objective prong as to any of them. [ECF No. 119 at 28–34.] Nor does Plaintiff meet his burden on the subjective prong. The Report concludes that, at best, the evidence establishes that Defendant Patterson was responsible for Plaintiff's placement in the RHU where the challenged conditions existed. *Id.* at 34–35. But even so, the record contains no genuine issue of material fact regarding the legitimate penological justifications for Plaintiff's placement there. *Id.* at 35–36. Thus, he fails to satisfy either prong of his Eighth Amendment claim.

In his objections, Plaintiff focuses on the alleged lack of outdoor recreation, rather than his claims related to lighting, food, or cleaning supplies. *See* ECF No. 124 at 9. He argues that the denial of outdoor recreation is unconstitutional and, further, that outdoor recreation includes, not only exercise, but also "fresh air, receiving sunlight, and walking in uninterrupted space." *Id.* He further states in his objections that in-cell exercise is impossible at Perry because the RHU cells are too small. *Id.*

As noted in the Report, Plaintiff alleges that he and other inmates have less access to outdoor recreation because his unit has only five outdoor recreation cages for forty-eight inmates, compared to sixteen cages in other units housing the same number of inmates. *See* ECF No. 15-3 at 2. Even accepting this disparity, Plaintiff offers no evidence that the outdoor recreation cages are the only available means of exercise or that Plaintiff is otherwise unable to exercise. *See* ECF No. 119 at 31. To the contrary, the record contains evidence that SCDC policy provides for an in-cell exercise program for RHU inmates who are largely restricted to their cells. *See id.* (citing ECF No. 97-1 at 47–50). The program includes warm-up and cool-down exercises, as well as

conditioning exercises for men, including toe touches, sit-ups, leg lifts, reverse dips, push-ups, knee bends, and side bends. *See* ECF No. 97-1 at 47–50; *see also Bolick v. Anderson*, 169 F.4th 528, 538 (4th Cir. 2026) ("To be sure, in-cell exercise may substitute for out-of-cell exercise where out-of-cell exercise is not feasible. It may do so, however, only when the incarcerated individual is in fact able to exercise inside of his cell.").

Nor does Plaintiff support his claim that the RHU cells are too small for exercise. *See* ECF No. 125 at 9. Indeed, he presents no evidence as to the size of his cell or any conditions that prevent him from exercising there. *See Bolick*, 169 F.4th at 538 (finding a genuine issue of material fact as "the feasibility and adequacy of proposed alternatives to out-of-cell exercise" where the inmate "provided evidence that he was unable to [exercise in his cell], pointing to his physical condition and the size of the prison cells in which he was housed"); *Lyles v. Stirling*, 844 F. App'x 651, 654 (4th Cir. 2021) (reversing summary judgment where an inmate claimed he was denied out-of-cell exercise for ten months because he shared a cell, which was too small for in-cell exercises, with another inmate and because he had no opportunity to shower after exercising).

Moreover, even assuming that the lack of out-of-cell exercise could constitute a constitutional violation, Plaintiff has not produced any evidence that he sustained any serious or significant physical or emotional injury as a result of the alleged deprivation. *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) ("[I]n order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."); *see also Lyles*, 844 F. App'x at 654 (reversing summary judgment where the record showed the inmate, who alleged he was denied out-of-cell exercise for ten months, provided evidence that he gained

weight, had increased cholesterol levels, and went from having prediabetes to diabetes). The court overrules Plaintiff's objection.

Plaintiff further objects to the magistrate judge's conclusions concerning the subjective prong of his Eighth Amendment claim. *See* ECF No. 124 at 9. He summarily argues that he has shown how each Defendant had knowledge of and personal involvement in the alleged constitutional rights. *Id.* But Plaintiff's argument does not address the applicable standard. To establish the subjective prong, he must show "that the prison official 'knew' of the substantial risk of harm to a prisoner and 'consciously disregarded' it . . . ." *Ford v. Hooks*, 108 F.4th 224, 230 (4th Cir. 2024). "Mere negligence" does not meet this standard. *Id.* Further, the Fourth Circuit, as a general matter, has recognized that "a legitimate penological justification can support prolonged detention of an inmate in segregated or solitary confinement . . . even though such conditions create an objective risk of serious emotional and psychological harm." *Porter v. Clarke*, 923 F.3d 348, 362–63 (4th Cir. 2019).

Here, Plaintiff does not identify evidence that any Defendant took a specific action to impose the complained-of conditions or consciously disregarded a substantial risk of harm arising from them. As noted by Defendants, SCDC policy provides that inmates housed in RHU receive opportunities for outside recreation five days per week when weather, staffing, and security permit. [ECF No. 97-3 at 19.] And even accepting Plaintiff's claims that he does not receive those outdoor recreation opportunities, he presents no evidence that the named Defendants, none of whom work in the RHU, are aware of the violation of SCDC policy. Moreover, and as noted in the Report, the record reflects legitimate penological purposes for Plaintiff's placement in the RHU, where the challenged conditions exist. *See* ECF No. 119 at 35–37; *see also Bolick*, 169 F.4th at 538 (recognizing that the deprivation of out-of-cell exercise may be justified for inmates who present

safety concerns or security risks and further noting "penological justifications must be particularized to the specific incarcerated individual"). While Plaintiff disagrees with his continued placement in the RHU and believes he has been targeted by Defendant Patterson, he has also been provided regular 90-day reviews that permitted meaningful review of his custody classification.

The court agrees with the magistrate judge's reasoning that there is no genuine issue of material fact as to the subjective element of Plaintiff's Eighth Amendment claim. His objection is overruled.

**B. Qualified Immunity**

Plaintiff briefly objects to the magistrate judge's finding that Defendants are entitled to qualified immunity. *See* ECF No. 124 at 12. "Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)). The court agrees with the reasoning articulated in the Report. Because Plaintiff has failed to establish a violation of any constitutional right, Defendants are entitled to qualified immunity. *See* ECF No. 119 at 27. Further, the cases discussed above and in the Report, together with Defendants' reliance on SCDC policy and the record supporting Plaintiff's continued RHU placement, do not demonstrate that Defendants violated any clearly established law that would have put Defendants on notice that any of the actions taken would violate a constitutional right.

**C. Official Capacity Claims**

The magistrate judge also finds that Defendants are entitled to Eleventh Amendment immunity as to the claims Plaintiff brings against them in their official capacities. *Id.* at 37–39.

Indeed, the Eleventh Amendment bars suit against a non-consenting state, its agencies, and its officers acting in their official capacities. *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996). Thus, a plaintiff asserting a claim under § 1983 may not recover monetary damages from officers named in their official capacities. *See Moneyhan v. Keller*, 563 F. App'x 256, 258 (4th Cir. 2014) (citing *Cromer*, 88 F.3d at 1332). Further, to the extent Plaintiff seeks injunctive relief against Defendants in their official capacities, he likewise has not shown any basis for the court to provide such relief for the reasons explained above and in the Report. [ECF No. 119 at 37–40.]

**D. Defendant Holbrook**

Plaintiff argues that the magistrate judge failed to address his claims that Defendant Holbrook violated his due process rights and, therefore, summary judgment should not be granted on those claims. [ECF No. 124 at 11.] While the Report did not identify Defendant Holbrook as a Defendant against whom Plaintiff alleged due process claims, the Report thoroughly addressed Plaintiff's Fourteenth Amendment claims and explained why Defendants are entitled to summary judgment on those claims. *See* ECF No. 119 at 21–27. The Report also explained why any alleged violations of SCDC policy alone do not give rise to a constitutional claim under § 1983. *See id.* at 14. The court agrees with that analysis and overrules Plaintiff's objection.

**CONCLUSION**

There is no clear error in the Report. Further, after de novo review of the Report, the applicable law, and the record of this case, the court overrules Plaintiff's objections and adopts and incorporates the Report. ECF No. 119. Accordingly, the court **GRANTS** Defendants' motion for summary judgment, ECF No. 97.

**IT IS SO ORDERED.**

Sherri A. Lydon

September 17, 2026
Columbia, South Carolina

Sherri A. Lydon
United States District Judge